JUSTICE PATTERSON delivered the opinion of the Court.
**6 *978 In this appeal, we apply the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, to recordings made by mobile video recorders (MVRs) in police vehicles in compliance with a municipal police chief's general order. The MVR recordings at issue documented an incident in which police officers pursued and arrested a driver who had allegedly eluded an officer attempting a traffic stop. One officer's decision to deploy a police dog during the arrest led to internal affairs investigations and criminal charges against the officer.
Plaintiff John Paff sought access to the MVR recordings under OPRA and the common law, and filed suit when defendant the Ocean County Prosecutor's Office (OCPO) declined his request. The OCPO opposed disclosure of the MVR recordings based on three OPRA provisions: the statute's exclusion of a "criminal investigatory record" from the definition of a "government record," N.J.S.A. 47:1A-1.1 ; its exemption for records pertaining to an **7 "investigation in progress," N.J.S.A. 47:1A-3(a) ; and its mandate that a public agency "safeguard from public access" a citizen's personal information entrusted to it, where disclosure of that information "would violate the citizen's reasonable expectation of privacy," N.J.S.A. 47:1A-1.
The trial court rejected the OCPO's arguments and ordered disclosure of the MVR recordings. A divided Appellate Division panel affirmed the trial court's determination.
*979 Paff v. Ocean Cty. Prosecutor's Office, 446 N.J. Super. 163, 177, 141 A.3d 300 (App. Div. 2016). The panel's dissenting member concluded that the MVR recordings constitute criminal investigatory records for purposes of N.J.S.A. 47:1A-1.1. Id. at 203, 141 A.3d 300 (Gilson, J., dissenting). The OCPO appealed as of right on that issue, and we granted its petition for certification on the applicability of OPRA's "investigations in progress" exemption, N.J.S.A. 47:1A-3(a), and the statute's privacy clause, N.J.S.A. 47:1A-1.
We reverse the judgment of the Appellate Division panel. We concur with the panel's dissenting judge that the MVR recordings were not "required by law" within the meaning of N.J.S.A. 47:1A-1.1, that they constitute criminal investigatory records under that provision, and that they are therefore not subject to disclosure under OPRA. We agree with the Appellate Division panel's conclusion that the recordings are not within OPRA's "investigations in progress" provision, and that OPRA's privacy clause does not exempt the recordings from disclosure. We remand the matter to the trial court for its consideration of plaintiff's claim of a common-law right of access to the MVR recordings.
I.
A.
1.
On January 9, 2014, the Barnegat Township Police Department issued a revised version of its General **8 Order No. 08-02 (General Order), entitled "Mobile Video Recording Equipment."[1] The General Order was issued under the authority of the Chief of the Barnegat Township Police Department, and applied only to that department.
The General Order stated the Barnegat Township Police Department's policy "to use [MVRs] in order to protect the members of this agency and to record information related to motorist contacts and other patrol related activities." The General Order instructed officers to record by MVR several categories of incidents. The incidents to be recorded included, among others, "[a]ll traffic stops, criminal enforcement stops, motorist aid situations, motor vehicle collisions, and pedestrian contacts in their entirety"; "[p]olice pursuits as defined by department policy"; "[m]ajor crime scenes"; and "[s]ituations which arise wherein the officer by reason of training or experience determines that the incident should be recorded."
Noting that "[t]he record function of the MVR equipment is automatically initiated when the patrol vehicle's emergency lights are activated or the wireless microphone is turned on," the General Order barred officers from deactivating the MVR's recording function when the vehicle's emergency lights are activated "except for dismounted posts or traffic details." Pursuant to the General Order, officers were prohibited from deactivating an MVR once it was activated to document an "incident or [motor vehicle] stop" until the conclusion of the incident or the release of the detained vehicle.
It is undisputed that the MVR recordings at the center of this appeal were made in compliance with the General Order.
2.
On January 29, 2014, a Tuckerton Borough police officer on patrol activated his overhead lights and attempted to pull over a **9 motorist. The driver disregarded the officer and continued to drive, prompting a police chase. As the driver approached *980 Barnegat Township, officers in that Township were alerted and two Barnegat Township patrol vehicles joined the Tuckerton officer's pursuit of the driver. The chase ended when the driver stopped her vehicle in the parking lot of a Barnegat Township municipal building. As officers at the scene removed the driver from her vehicle, a Tuckerton Borough police officer and his police dog arrived and participated in the driver's arrest. According to the OCPO, the officer unlawfully caused the police dog to injure the driver.
MVR equipment installed in two Barnegat Township police vehicles recorded the police pursuit and arrest of the driver. The trial court found, and the parties agree, that the recordings documented the interaction between the driver and the police dog.
As a result of the contact between the police dog and the driver, the OCPO and the Tuckerton Police Department initiated internal affairs investigations of the Tuckerton Borough police officer. The OCPO later charged the officer with two counts of second-degree official misconduct, N.J.S.A. 2C:30-2 ; third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) ;[2] fourth-degree false swearing, N.J.S.A. 2C:28-2(a) ; third-degree tampering with public records or information, N.J.S.A. 2C:28-7(a)(1) ; and second-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b). The driver was charged with eluding, N.J.S.A. 2C:29-2(b), and resisting arrest, N.J.S.A. 2C:29-2(a)(3), and was issued four summonses for motor vehicle violations. Accordingly, the driver was both a victim of the Tuckerton officer's alleged criminal offenses and the defendant in criminal and motor vehicle violation proceedings arising from the same incident.
**10 3.
Approximately four months after the driver's arrest, plaintiff wrote to the OCPO. He stated that he had read in a local newspaper that "the police dog's interaction with [the driver] may have been captured by a video camera that is owned or under the control of Barnegat Township."[3] Pursuant to OPRA and the common-law right of access, plaintiff requested "a copy of the video of this incident."[4]
The OCPO objected to the release of the requested MVR recordings on the ground that they involved a "criminal investigation in progress, pursuant to N.J.S.A. 47:1A-3 as well as an internal affairs matter," under the New Jersey Attorney General's Guidelines on Internal Affairs and Procedures.
Plaintiff contested the OCPO's reliance on N.J.S.A. 47:1A-3. He argued that any record that was public before a criminal investigation or internal affairs investigation would not be exempt from production under OPRA. The OCPO responded by reiterating its objections to the production of the MVR recordings.
By letter dated June 30, 2014, counsel for the driver advised the OCPO of the driver's objection "to the release of any *981 audio or video tapes at this time, because of privacy and other related issues."
B.
Plaintiff filed a verified complaint and order to show cause, seeking access to the MVR recordings on the basis of OPRA and **11 the common-law right of access. In opposition to the order to show cause, the OCPO presented certifications by two officers setting forth the General Order governing MVR recordings, the driver's objection to production of the recordings, and the criminal and internal affairs investigations that arose from the January 29, 2014 incident.
In its initial opinion in this matter, the trial court found the MVR recordings to be government records under N.J.S.A. 47:1A-1.1. The court stated that "at this juncture," the OCPO had failed to meet its burden to demonstrate that the MVR recordings were criminal investigatory records under N.J.S.A. 47:1A-1.1. It held that the OCPO had not proven that the recordings were "not required by law," as N.J.S.A. 47:1A-1.1 mandates in order for a record to be exempt from OPRA, and stated that it was unclear whether the recordings were made as part of an investigation.[5]
The trial court also rejected the OCPO's contention that the MVR recordings were subject to OPRA's exemption for records pertaining to an "investigation in progress," pursuant to N.J.S.A. 47:1A-3(a). It reasoned that any investigation regarding the police officer and the driver did not commence until after the MVR cameras captured the incident. The court did not reach the question whether the OCPO had met OPRA's second requirement for the "investigation in progress" exemption: that the release of the recordings would be "inimical to the public interest." Ibid.
Finally, the trial court held that the driver had no reasonable expectation of privacy that would justify the OCPO's denial of plaintiff's request pursuant to OPRA's privacy clause, N.J.S.A. 47:1A-1.
**12 Accordingly, the trial court held that the OCPO had improperly withheld the MVR recordings. However, pending supplemental briefing as to the applicability of the criminal investigatory exemption, it stayed its determination for thirty days and ordered the OCPO to submit the MVR recordings for in camera review to allow the court to further assess the impact of the release of the recordings on the driver's privacy interest.
Following further briefing, in camera review of the MVR recordings, and a second oral argument, the trial court issued a supplemental opinion. It determined that by virtue of the Barnegat Township Police Department's General Order, which it construed to carry the "force of law," the MVR recordings were "required by law" to be made, and were therefore outside the scope of N.J.S.A. 47:1A-1.1's exemption for criminal investigatory records. The court did not reach that provision's additional requirement that the recordings pertain to "any criminal investigation or related civil enforcement proceeding." N.J.S.A. 47:1A-1.1.
The trial court reiterated its prior holding that the release of the recordings would not violate the driver's reasonable expectation of privacy because the recordings depicted a "motor vehicle traffic stop in a public area," and did not show the driver's face. The court found that the *982 recordings were not "so horrific or chilling" as to warrant nondisclosure. The court therefore found that plaintiff had proven his claim under OPRA, and awarded attorneys' fees to plaintiff. It did not address plaintiff's common-law claim.
The OCPO appealed the trial court's judgment, and the Appellate Division panel granted amicus curiae status to the Attorney General and the County Prosecutors Association of New Jersey.
The majority of the Appellate Division panel affirmed the trial court's judgment. Paff, 446 N.J. Super. at 177, 141 A.3d 300. The majority concurred with the trial court that the MVR recordings constitute government records and were not exempt as records pertaining to a criminal investigation under N.J.S.A. 47:1A-1.1. Id. at 184-85, 141 A.3d 300. The majority construed the phrase **13 "required by law" in that provision to encompass any record that is required by a local law enforcement order, as long as the order is issued pursuant to a delegation of power under N.J.S.A. 40A:14-118. Ibid. That statute authorizes a municipality to create and establish a police force, provide for its maintenance, regulation and control, and adopt an ordinance appointing a chief of police. The panel also held that because the MVR recordings preceded the commencement of any criminal investigation, they did not "pertain" to any such investigation, and that the OCPO therefore failed to meet its burden under the criminal investigatory exemption's second prong. Id. at 188, 141 A.3d 300.
The majority of the panel also affirmed the trial court's determination as to N.J.S.A. 47:1A-3(a)'s "investigations in progress" exemption. Id. at 188-90, 141 A.3d 300. It held that the exemption did not apply to the MVR recordings because the recordings were made prior to the investigations and the OCPO did not demonstrate that disclosure would be inimical to the public interest. Ibid.
Finally, based on its in camera review of the recordings and its consideration of the factors that this Court identified in Doe v. Poritz, 142 N.J. 1, 88, 662 A.2d 367 (1995), the panel's majority found that the driver's privacy interest did not outweigh the public's interest in disclosure under OPRA's privacy clause, N.J.S.A. 47:1A-1.1. Paff, 446 N.J. Super. at 192-93, 141 A.3d 300.
One member of the panel dissented from the majority's holding regarding N.J.S.A. 47:1A-1.1's exemption for criminal investigatory records. Id. at 194, 141 A.3d 300 (Gilson, J., dissenting). The dissenting judge focused on the first of that provision's two prongs, under which a record must not be "required by law to be made, maintained, or kept on file" in order to qualify for the exemption. Id. at 195-201, 141 A.3d 300 (quoting N.J.S.A. 47:1A-1.1). The dissenting judge rejected the majority's conclusion that a record is "required by law" under N.J.S.A. 47:1A-1.1 because it was created pursuant to the order of a police chief. Id. at 199-201, 141 A.3d 300. He observed that "[i]t is hard to imagine that there are any criminal investigatory documents created in a police **14 department for which there is not an order, directive or instruction calling for that document to be prepared." Id. at 199, 141 A.3d 300. The dissenting judge reasoned that the majority's broad construction of the "required by law" prong in N.J.S.A. 47:1A-1.1 would exclude virtually any document generated in a police department from OPRA's criminal investigatory records exception. Ibid. He further concluded that the MVR recordings pertained to a criminal investigation, as N.J.S.A. 47:1A-1.1 mandates in order for the exemption to apply. Id. at 201-03, 141 A.3d 300.
The OCPO appealed as of right with respect to the issue raised in the dissent.
*983 R. 2:2-1(a). We granted the OCPO's petition for certification regarding the remaining issues addressed by the Appellate Division panel. 228 N.J. 403, 157 A.3d 831 (2016). We also granted amicus curiae status to the New Jersey State Association of Chiefs of Police, the New Jersey Crime Victims' Law Center, the American Civil Liberties Union of New Jersey, the Latino Leadership Alliance of New Jersey, Garden State Equality, People's Organization for Progress, and the New Jersey Chapter of the Society of Professional Journalists.
II.
The OCPO contends that the MVR recordings are within OPRA's exemption for criminal investigatory records. It argues that when the Legislature replaced the Right to Know Law (RTKL), L. 1963, c. 73, with OPRA, L. 2001, c. 404, it intended to preserve the narrow definition of "required by law" that applied under the RTKL. According to the OCPO, the MVR recordings were not "required by law" because the General Order at issue here is not analogous to the Attorney General Directive mandating Use of Force Reports that we reviewed in North Jersey Media Group, Inc. v. Township of Lyndhurst, 229 N.J. 541, 565-66, 163 A.3d 887 (2017). The OCPO asserts that the MVR recordings satisfy the second part of the definition of "criminal investigatory records"
**15 as well because they pertain to the early stage of a criminal investigation, as did the recordings of a police shooting in Lyndhurst, 229 N.J. at 569, 163 A.3d 887.
The OCPO also argues that the MVR recordings are within the exemption set forth in N.J.S.A. 47:1A-3 for records of an investigation in progress because they pertain to criminal and internal affairs investigations, and their disclosure would be inimical to the public interest. Finally, the OCPO contends that disclosure of the recordings would violate the driver's reasonable expectation of privacy recognized in N.J.S.A. 47:1A-1.
Plaintiff counters that the OCPO failed to demonstrate that the MVR recordings fall within the criminal investigatory records exemption. He notes that in Lyndhurst, we rejected the definition of "required by law" that had been set forth in the RTKL. Plaintiff contends that the General Order is analogous to the Attorney General Directive addressed in Lyndhurst for purposes of OPRA. He urges, further, that we consider only an investigator's work product to "pertain" to a criminal investigation, as that term is used in N.J.S.A. 47:1A-1.1.
Plaintiff asserts that the MVR recordings are not within N.J.S.A. 47:1A-3's exemption for records of an investigation in progress because they were created before any investigation began and the public has a compelling interest in disclosure. He contends that there is no showing in this case that disclosure of the MVR recordings would intrude on the driver's reasonable expectation of privacy, or that any privacy interest outweighs the public interest in the recordings.
Amici curiae the Attorney General, the County Prosecutors Association of New Jersey, and the New Jersey State Association of Chiefs of Police assert that the MVR recordings are exempt from disclosure as criminal investigatory records because they are not required by law to be made, maintained, or kept, and they pertain to a criminal investigation. They argue that the recordings should be withheld from disclosure to protect the driver's reasonable expectation of privacy. Amicus curiae New Jersey Crime Victims' Law Center contends that a crime victim's privacy interest **16 and right to be treated with fairness, compassion, and respect outweigh the public interest in disclosure.
Amicus curiae American Civil Liberties Union of New Jersey argues that MVR
*984 recordings are made to protect law enforcement and to serve as instructional material, not to investigate criminal activity. Amicus asserts that police conduct and criminal activity in a public setting do not implicate privacy interests, and that when the factors set forth in Doe, 142 N.J. at 88, 662 A.2d 367, are applied to this case, the public's interest in disclosure outweighs any privacy interest.
Amici curiae the Latino Leadership Alliance of New Jersey, Garden State Equality, People's Organization for Progress, and the New Jersey Chapter of the Society of Professional Journalists assert that the criminal investigatory exemption does not apply to this appeal. Amici contend that records created pursuant to a police chief's directive are "required by law" under N.J.S.A. 47:1A-1.1 and that the MVR recordings did not pertain to any investigation for purposes of OPRA's exemptions for criminal investigatory records and records of an investigation in progress. They argue that redaction of a record prior to production under OPRA adequately protects the privacy interest of a crime victim.
III.
The Legislature enacted OPRA "to promote transparency in the operation of government." Carter v. Doe (In re N.J. Firemen's Ass'n Obligation ), 230 N.J. 258, 276, 166 A.3d 1125 (2017) (quoting Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541, 46 A.3d 536 (2012) ). The statute serves "the bedrock principle that our government works best when its activities are well-known to the public it serves." Burnett v. County of Bergen, 198 N.J. 408, 414, 968 A.2d 1151 (2009). In OPRA, the Legislature declared it public policy that government records "shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest," and that any limitation of the right of action accorded by **17 OPRA "shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. OPRA imposes on public agencies "the burden of proving that the denial of access is authorized by law." N.J.S.A. 47:1A-6.
This appeal requires that we interpret three of OPRA's exemptions: the exclusion of "criminal investigatory records" from N.J.S.A. 47:1A-1.1's definition of "government records"; the exemption for records pertaining to an "investigation in progress," N.J.S.A. 47:1A-3 ; and the statute's privacy clause, N.J.S.A. 47:1A-1. In our construction of those provisions, our objective "is to determine and carry out the Legislature's intent." Sussex Commons, 210 N.J. at 540-41, 46 A.3d 536 ; accord Carter, 230 N.J. at 274, 166 A.3d 1125 ; Gilleran v. Township of Bloomfield, 227 N.J. 159, 171, 149 A.3d 800 (2016). "We look first to the plain language of the statute to try to give meaning to the Legislature's intent." Lyndhurst, 229 N.J. at 557, 163 A.3d 887. If that language is ambiguous, we "may examine extrinsic evidence for guidance." Sussex Commons, 210 N.J. at 541, 46 A.3d 536.
A.
We first consider the criminal investigatory records exemption set forth in N.J.S.A. 47:1A-1.1.
In OPRA, the Legislature expansively defined the term "[g]overnment record[s]" to encompass any record "made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof," or any record "that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof." N.J.S.A. 47:1A-1.1.
"[C]riminal investigatory records" are among the several categories of records *985 that the statute excludes from its definition of "government record[s]." Ibid. That term is defined as "a record which is not required by law to be made, maintained or kept on **18 file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding." Ibid.
Accordingly, an agency seeking to withhold a record from disclosure as a criminal investigatory record must satisfy "both prongs of the exception" by demonstrating that the record is not required by law to be made, maintained or kept on file, and that it "pertains" to a criminal investigation or related civil enforcement proceeding. Lyndhurst, 229 N.J. at 556, 163 A.3d 887.
1.
In Lyndhurst, decided while this appeal was pending, we rejected the narrow construction of OPRA's definition of a public record adopted by the Appellate Division in that appeal as inconsonant with OPRA's more expansive reach. Id. at 566, 163 A.3d 887. Instead, we construed the criminal investigatory exemption "in light of the current law's stated purpose, which favors broad access, and not prior case law that analyzed the narrower RTKL." Ibid.
In accordance with that principle, we applied the "not required by law" prong of the N.J.S.A. 47:1A-1.1 standard to two categories of records relating to a police shooting: Use of Force Reports (UFRs) and MVR recordings of the incident. Id. at 564-69, 163 A.3d 887.
The contested UFRs were prepared in accordance with a Use of Force Policy that was promulgated by the Attorney General and governed law enforcement across the State. Id. at 565, 163 A.3d 887. That policy mandated that " '[i]n all instances when physical, mechanical, or deadly force is used [by law enforcement], each officer who has employed such force shall complete' a 'Use of Force Report' and '[a]ny reports made necessary by the nature of the underlying incident.' " Ibid. (first and third alterations in original) (quoting Attorney General, Use of Force Policy 7 (Apr. 1985, rev. June 2000) (Use of Force Policy) ).
**19 Recognizing the Attorney General's role as New Jersey's chief law enforcement officer, with the authority to adopt guidelines, directives, and policies that bind police departments statewide, we deemed the Use of Force Policy to be "a clear, pointed statement of policy from the chief law enforcement official to all officers who have used deadly force." Ibid. We viewed the Use of Force Policy to have "the force of law for police entities." Ibid. (quoting O'Shea v. Township of West Milford, 410 N.J. Super. 371, 382, 982 A.2d 459 (App. Div. 2009) ). We concluded that the defendant municipality failed to meet its burden to demonstrate that the UFRs were "not required by law to be made, maintained or kept on file" under N.J.S.A. 47:1A-1.1. See ibid.
We reached the opposite conclusion with respect to the MVR recordings at issue in the Lyndhurst appeal. Id. at 567-69, 163 A.3d 887. We noted that the parties identified no Attorney General directive addressing such recordings. Id. at 567, 163 A.3d 887. Moreover, it was unclear whether the MVR cameras had recorded the police shooting automatically, or had been activated by police officers "in an exercise of discretion or in response to an order at the local level." Ibid. [6] We thus found no *986 evidence that the police officers in Lyndhurst were "required by law" to make the MVR recordings in dispute. Id. at 567-68, 163 A.3d 887.
We rejected the plaintiff's argument in Lyndhurst that the MVR recordings in that case were "required by law" because they were retained in accordance with retention schedules generated in compliance with the Destruction of Public Records Law, N.J.S.A. 47:3-15 to -32. Id. at 568, 163 A.3d 887. We observed that the criminal investigatory records exemption "would have little meaning" if records were deemed "required by law" simply because **20 retention schedules required that they be maintained for a specific period. Ibid.
In short, we found no evidence in the record in Lyndhurst that the MVR recordings in that case were "required by law to be made, maintained or kept on file" in accordance with a directive carrying the force of law. Ibid. We held that those recordings were within N.J.S.A. 47:1A-1.1's criminal investigatory records exemption to OPRA. Id. at 569, 163 A.3d 887.
Guided by the plain language of N.J.S.A. 47:1A-1.1 and the principles set forth in Lyndhurst, we apply the first prong of the test for criminal investigatory records to the MVR recordings in this case.
We find significant distinctions between the Attorney General's Use of Force Policy -- deemed in Lyndhurst to carry the force of law for police entities -- and the Barnegat Township Police Chief's General Order. First, no statute gives a General Order promulgated by the Barnegat Township Police Chief the force of law. N.J.S.A. 40A:14-118, cited by the Appellate Division majority in support of its conclusion that the General Order was "required by law," falls short of the mark. That statute empowers a municipality to create a police department and to appoint a police chief as the head of that department, and generally describes the duties of a police chief.[7] It does not grant to a municipal police chief authority analogous to the Attorney General's statutory power to adopt guidelines, directives, and policies that bind law enforcement **21 throughout our State. See Lyndhurst, 229 N.J. at 565, 163 A.3d 887 (noting Attorney General's authority under N.J.S.A. 52:17B-97 to -117); O'Shea, 410 N.J. Super. at 382-83, 982 A.2d 459 (same). We do not consider the Barnegat Township Police Chief's General Order to constitute a "law" as that term is used in N.J.S.A. 47:1A-1.1.
We are unpersuaded by our dissenting colleagues' invocation of the 1981 amendment to N.J.S.A. 40A:14-118 as evidence that the Legislature intended to enable municipal police chiefs to promulgate orders with the "force of law." Post at 32-33, 192 A.3d at 993-94. As its plain language confirms, the Legislature amended the statute to simply "redefine the relationship between a municipal governing body and the chief of police."
*987 Falcone v. De Furia, 103 N.J. 219, 221, 510 A.2d 1174 (1986). As amended, N.J.S.A. 40A:14-118 limited the authority of municipalities to regulate the internal affairs of police departments, designated properly-appointed chiefs of police as the heads of police forces, and granted such chiefs the authority to "[p]rescribe the duties and assignments of all subordinates and other personnel." N.J.S.A. 40A:14-118(c). The amended statute thus "sought to avoid undue interference by a governing body into the operation of the police force." Falcone, 103 N.J. at 221, 510 A.2d 1174. It does nothing to invest police chiefs with the authority to impose binding legal obligations on their subordinates.
Second, we agree with the dissenting Appellate Division judge that the majority's construction of the criminal investigatory records exemption would exclude all but a few records from that provision. Paff, 446 N.J. Super. at 199, 141 A.3d 300 (Gilson, J., dissenting). If, as the Appellate Division majority concluded, a municipal police chief's directive to his or her subordinates were deemed to carry the force of law, any record pertaining to a criminal investigation that was created in accordance with a directive would be ineligible for N.J.S.A. 47:1A-1.1's exemption for such records. The exemption would be limited to criminal investigatory records that are not addressed in any order or instruction **22 from a police chief to his or her officers. In short, the vast majority of criminal investigatory records would fall outside of the exemption for such records.
Such an interpretation of N.J.S.A. 47:1A-1.1 would effectively write the criminal investigatory records exemption out of OPRA, contrary to our rules of statutory construction. See Carter, 230 N.J. at 274, 166 A.3d 1125 ("[L]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless." (alteration in original) (quoting State v. Regis, 208 N.J. 439, 449, 32 A.3d 1109 (2011) ) ). We decline to construe the "required by law" language of N.J.S.A. 47:1A-1.1 so as to virtually eliminate the criminal investigatory records exemption from OPRA.[8]
Here, the MVR recordings were made and retained in accordance with a local police chief's order to his subordinates, not in compliance with any law or directive carrying the force of law. The OCPO has therefore satisfied the first prong of N.J.S.A. 47:1A-1.1's standard for OPRA's criminal investigatory records exemption.
2.
In Lyndhurst, we held that the MVR recordings in dispute met the second prong of the test for OPRA's criminal investigatory records exemption because they "pertain[ ] to any criminal investigation."
**23 229 N.J. at 569, 163 A.3d 887 (alteration in original) (quoting N.J.S.A. 47:1A-1.1 ). We agreed with the Appellate Division panel in that case that "when an *988 officer turns on a mobile video recorder to document a traffic stop or pursuit of a suspected criminal violation of law, that recording may pertain to a 'criminal investigation,' albeit in its earliest stages." Id. at 569, 163 A.3d 887 (quoting N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 441 N.J. Super. 70, 104-05, 116 A.3d 570 (App. Div. 2015) ). Observing that the MVR recordings in that case depicted a series of police actions -- officers' attempts to stop and arrest two suspects, their pursuit of a suspect "as he attempted to elude [officers] in violation of the law," and their response to his resistance -- we concluded that the MVR recordings pertained to two investigations: the officers' investigation of "actual or potential violations of criminal law," and the investigation by the Attorney General's Shooting Response Team into the fatal shooting of one suspect. Ibid.; cf. O'Shea, 410 N.J. Super. at 385, 982 A.2d 459 (noting "the absence of a factual showing that any of the reports sought in this matter pertained to an actual criminal investigation or to an existing related civil enforcement proceeding").
Our holding in Lyndhurst governs our application of N.J.S.A. 47:1A-1.1's requirement that the disputed record "pertain[ ] to any criminal investigation" in this appeal. See 229 N.J. at 569, 163 A.3d 887. When the MVR recordings in this matter were made, they pertained -- at a minimum -- to the investigation of the driver's alleged eluding of police. That investigation was at its inception, but it was clearly underway. By the time plaintiff sought the MVR recordings, those recordings pertained to not one but several investigations: the criminal investigation of the driver for eluding and resisting arrest, and the internal affairs and criminal investigations of the Tuckerton Borough police officer.
Accordingly, the OCPO has satisfied the second prong of OPRA's criminal investigatory records exemption. N.J.S.A. 47:1A-1.1. We hold that that exemption warrants the OCPO's decision to withhold the MVR recordings from disclosure under OPRA, and **24 we reverse the Appellate Division panel's determination on that ground.
B.
We next consider OPRA's "investigations in progress" exemption, prescribed by N.J.S.A. 47:1A-3(a).[9]
That exemption provides in relevant part that
where it shall appear that the record or records which are sought to be inspected, copied, or examined shall pertain to an investigation in progress by any public agency, the right of access provided for in [OPRA] may be denied if the inspection, copying or examination of such record or records shall be inimical to the public interest; provided, however, that this provision shall not be construed to allow any public agency to prohibit access to a record of that agency that was open for public inspection, examination, or copying before the investigation commenced.
[ N.J.S.A. 47:1A-3(a).]
As we observed in Lyndhurst, in order to invoke that exemption, a public agency must demonstrate that "(1) the requested *989 records 'pertain to an investigation in progress by any public agency,' (2) disclosure will 'be inimical to the public interest,' and (3) the records were not available to the public before the investigation began." 229 N.J. at 573, 163 A.3d 887 (quoting N.J.S.A. 47:1A-3(a) ).
The OCPO has met N.J.S.A. 47:1A-3(a)'s first requirement: at the moment that the MVR cameras were activated in this case, the recordings pertained to the police investigation of the driver's alleged eluding of officers. As the incident progressed, portions of those recordings also pertained to the police investigation of the driver's alleged offense of resisting arrest, and the police and internal affairs investigation of the Tuckerton police officer's alleged official misconduct and aggravated assault offenses. The **25 OCPO has also satisfied the third component of the test; the MVR cameras recorded the eluding incident as it unfolded, and the recordings were not publicly available before the investigation began.
The OCPO, however, has failed to satisfy the second prong of the N.J.S.A. 47:1A-3(a) standard, which requires proof that disclosure would be "inimical to the public interest." See Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 381-83, 817 A.2d 1017 (App. Div. 2003) (rejecting agency's claim that ongoing investigations exemption applied because release of 9-1-1 tape would make it difficult to empanel jury at trial); Serrano v. South Brunswick Township, 358 N.J. Super. 352, 367, 817 A.2d 1004 (App. Div. 2003) (same); cf. Asbury Park Press v. Lakewood Twp. Police Dep't, 354 N.J. Super. 146, 161-64, 804 A.2d 1178 (Law Div. 2002) (finding that release of 9-1-1 tapes would not be inimical to public interest under RTKL). That aspect of the test calls for "a fact-specific analysis of how the statutory standard applies." Lyndhurst, 229 N.J. at 576, 163 A.3d 887.
In Lyndhurst, we considered whether disclosure of the MVR recordings of a police shooting would be "inimical to the public interest" for purposes of N.J.S.A. 47:1A-3(a). 229 N.J. at 575-77, 163 A.3d 887. We noted that "officer safety, the reliability of ongoing investigations, and transparency" are relevant to the question whether disclosure of a given record is "inimical to the public interest." Id. at 576, 163 A.3d 887. In that setting, we found that the release of the MVR recordings posed no threat to officer safety or the integrity of the ongoing investigation, and that the public interest in disclosure was compelling. Id. at 576-77, 163 A.3d 887.
Here, the OCPO has identified no threat to officer safety, so the first component of the test weighs in favor of disclosure. Its concerns about the impact of a disclosure on the reliability of the investigations at issue are not compelling. As we noted in Lyndhurst, when addressing a police shooting, a court should consider "whether investigators have interviewed the available, principal **26 witnesses to the incident -- namely, the witnesses on the scene who saw the shooting and are willing to speak with law enforcement." 229 N.J. at 576, 163 A.3d 887. Here, as in Lyndhurst, there is no assertion that when plaintiff sought the MVR recordings four months after the incident depicted in those recordings, any eyewitness interview relevant to the criminal investigation of the driver, or the criminal or internal affairs investigations of the police officer, had yet to be conducted. The second factor that we identified in Lyndhurst to be relevant to the "inimical to the public interest" standard therefore supports disclosure.
Finally, there is a strong public interest in the interaction of police officers and the driver, and the setting of this case. As we observed in Lyndhurst, "non-disclosure of dash-cam videos can undermine confidence *990 in law enforcement and the work that officers routinely perform" and "fuel the perception that information is being concealed." Id. at 576-77, 163 A.3d 887. The final factor identified in Lyndhurst as pertinent to the question whether disclosure is "inimical to the public interest" under N.J.S.A. 47:1A-3(a) thus weighs in plaintiff's favor.
Accordingly, we agree with the Appellate Division panel that the OCPO did not sustain its burden to show that the MVR recordings are within OPRA's "investigation in progress" exemption. N.J.S.A. 47:1A-3(a).
C.
Finally, we apply OPRA's privacy clause, which instructs a public agency to refrain from disclosing "a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. In our inquiry, we consider the fact that in this case, the driver formally objected to disclosure based on unspecified privacy concerns.
In Burnett, we applied the privacy clause to bar an OPRA request for "eight million pages of land title records of all types, extending over a period of twenty-two years, which contain names, addresses, social security numbers, and signatures of countless **27 citizens of this State." 198 N.J. at 414, 968 A.2d 1151. We viewed OPRA's legislative history to "offer[ ] direct support for a balancing test that weighs both the public's strong interest in disclosure with the need to safeguard from public access personal information that would violate a reasonable expectation of privacy." Id. at 427, 968 A.2d 1151.
Relying on our decision in Doe, 142 N.J. at 88, 662 A.2d 367, we identified the following factors to be relevant to that balancing test:
(1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
[ Burnett, 198 N.J. at 427, 968 A.2d 1151 (quoting Doe, 142 N.J. at 88, 662 A.2d 367 ).]
In the "unusual circumstances" of Burnett, we found that OPRA's privacy clause warranted disclosure only after the redaction of social security numbers from the records, with the cost of such redaction imposed on the requestor. Id. at 415, 437-40, 968 A.2d 1151.
We reach a different conclusion in the setting of this appeal. The MVR recordings depicted a driver's arrest in a public place. The trial court, which conducted an in camera review of the recordings, stated that the driver's face is not shown in the recordings, and the Appellate Division panel agreed that the recordings disclosed no private information.
Moreover, when the driver objected to disclosure of the recordings, she identified no specific privacy concerns. Indeed, the driver's counsel's letter disclosed that she had filed a civil suit against the Borough of Tuckerton arising from her interaction with the Tuckerton police officer and the police dog.[10] As plaintiff **28 notes, in such a *991 lawsuit, the MVR recordings of the incident would constitute crucial evidence.
We concur with the determinations of the trial court and Appellate Division panel that the driver's privacy interest did not warrant the OCPO's decision to withhold recordings from disclosure in this case.
In other settings, a third party's reasonable expectation of privacy may warrant withholding a record from disclosure under N.J.S.A. 47:1A-1. For example, if a sexual assault or similar crime were recorded by MVR, the victim would have a compelling objection to the disclosure of that recording, even in redacted form. In other circumstances, the blurring of a victim's face or other methods of redaction prior to disclosure of an MVR recording may resolve a privacy concern.
In making these sensitive determinations, courts should give serious consideration to the objections of individuals whose privacy interests are implicated. We remind objecting parties and their attorneys that a generic objection based on privacy gives a court scant basis to explore the issue, and that any privacy concerns about a disclosure sought pursuant to OPRA or the common law should be explained in detail.
IV.
By virtue of its conclusion that the MVR recordings are government records under OPRA and are not within any exemption from the statute, the trial court did not reach the question whether plaintiff has a common-law right of access to the recordings. Nor did the Appellate Division address that issue.
As we noted in Lyndhurst, OPRA does not determine the outcome when a request for disclosure is evaluated under the common law. 229 N.J. at 578, 163 A.3d 887. The common-law right of access applies to a more expansive class of records than the category of government records defined by OPRA; to qualify as a **29 public record under the common law, "the item must be 'a written memorial[ ] ... made by a public officer, and ... the officer [must] be authorized to make it.' " Mason v. City of Hoboken, 196 N.J. 51, 67, 951 A.2d 1017 (2008) (alterations in original) (quoting Nero v. Hyland, 76 N.J. 213, 222, 386 A.2d 846 (1978) ). As we noted in Lyndhurst,
To gain access to this broader class of materials, the requestor must make a greater showing than OPRA requires: "(1) the person seeking access must establish an interest in the subject matter of the material; and (2) the citizen's right to access must be balanced against the State's interest in preventing disclosure."
[ 229 N.J. at 578-79, 163 A.3d 887 (quoting Mason, 196 N.J. at 67-68, 951 A.2d 1017 ).]
In Lyndhurst, we identified considerations relevant to a common-law claim of access to the MVR recording of a police shooting and other materials relating to that incident; those considerations were distilled from factors that we identified in Loigman v. Kimmelman, 102 N.J. 98, 113, 505 A.2d 958 (1986), and from the "core concerns" arising from N.J.S.A. 47:1A-3(a). Lyndhurst, 229 N.J. at 579, 163 A.3d 887. The considerations identified in Lyndhurst are (1) the State's and public's "interest in thorough and reliable investigations that are untainted by the early disclosure of investigative details"; and (2) the plaintiff's objective to promote the public good by requesting materials that may "shed light on the 'possible use of excessive force by police,' " and may "also reassure the public that the police acted professionally and lawfully." Id. at 579, 163 A.3d 887 (quoting Lyndhurst, 441 N.J. Super. at 117, 116 A.3d 570 ). In the careful balancing "that *992 each case -- and this sensitive area -- require, we look in particular at the level of detail contained in the materials requested." Id. at 580, 163 A.3d 887.
We concluded in Lyndhurst that the balancing of those considerations, as applied to "investigative reports, witness statements, and other comparably detailed documents," weighed against disclosure. Id. at 580, 163 A.3d 887. We determined, however, that the balancing test favored disclosure in the case of the MVR recordings of the police shooting that were disputed in that appeal.
**30 Ibid. We held that the recordings should be disclosed under the common law. Ibid.
We remand this matter to the trial court so that the court may address plaintiff's claim of a common-law right of access to the MVR recordings at issue. In that inquiry, the trial court should consider the interests identified by the parties as well as any other relevant factors.
V.
The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for proceedings consistent with this opinion.
CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA and SOLOMON join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICES LaVECCHIA and TIMPONE join.

We summarize the facts based on the record submitted to the trial court.

Although the indictment stated that the officer was charged with "aggravated assault-third degree," the Code provision cited in the indictment sets forth a second-degree offense.

Plaintiff represented to the OCPO that in an identical OPRA and common-law request, he sought video recordings from Barnegat Township. That request is not relevant to this appeal.

Plaintiff also requested any summonses issued against the driver, with the driver's name and address unredacted. Although the OCPO initially stated that it had no records responsive to that request, it later produced a criminal complaint and four motor vehicle summonses issued to the driver as a result of the January 29, 2014 incident.

In its brief, the OCPO clarified that it relied on OPRA's exemption for a "criminal investigatory record," N.J.S.A. 47:1A-1.1, as well as the statute's exemption for records pertaining to an "investigation in progress," N.J.S.A. 47:1A-3(a), and its privacy clause, N.J.S.A. 47:1A-1. The trial court noted that the OCPO had not cited N.J.S.A. 47:1A-1.1 in its initial objection to plaintiff's request, but ruled on the merits of that objection nevertheless.

In Lyndhurst, we acknowledged but did not reach the "intriguing issue" raised in this appeal -- whether a local police chief's order is analogous to a directive from the Attorney General for purposes of OPRA's exemption for criminal investigatory records -- because there was no indication that the officers in Lyndhurst"acted pursuant to any local directives." Id. at 567-68, 163 A.3d 887.

N.J.S.A. 40A:14-118 permits a municipality's governing body, by ordinance, to "create and establish ... a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof." For a municipality that chooses to appoint a chief of police, the statute provides that the chief "shall be the head of the police force" and "shall be directly responsible to the appropriate authority for the [police force's] efficiency and routine day to day operations." Ibid. The police chief "shall, pursuant to policies established by the appropriate authority," undertake a range of functions including the administration and enforcement of "rules and regulations and special emergency directives for the disposition and discipline of the force and its officers and personnel." Id. § 118(a).

Our dissenting colleagues suggest that we should view the General Order to be "required by law," and thus outside the scope of the criminal investigatory records exemption, in order to give greater weight to other exemptions that may apply in a given case. Post at 34-36, 192 A.3d at 994-95. They also suggest that OPRA's general objective to promote disclosure compels us to exclude the MVR recordings at issue from that exemption. Post at 33-34, 36, 192 A.3d at 993-94, 995-96. Both arguments are unavailing. We base our holding on the plain language of the exemption, which expresses the Legislature's intent to exclude from disclosure records that "pertain[ ] to any criminal investigation," if those records are "not required by law to be made, maintained or kept on file." N.J.S.A. 47:1A-1.1 ; see also Lyndhurst, 229 N.J. at 557, 163 A.3d 887 (stating that courts should construe OPRA exemptions in accordance with their plain language).

Although we conclude that the MVR recordings are exempt from disclosure under N.J.S.A. 47:1A-1.1, we nonetheless consider the two other OPRA exemptions at issue in this case to offer guidance about the exemptions. See Lyndhurst, 229 N.J. at 570-78, 163 A.3d 887 (addressing application of N.J.S.A. 47:1A-3 exemption to MVR recordings notwithstanding determination that recordings were exempt from disclosure under N.J.S.A. 47:1A-1.1 ).

At oral argument, plaintiff's counsel represented that the driver filed an action in the United States District Court as a result of the incident. The record contains no details regarding that action.