**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0181-22

CRAIG SZEMPLE,

    Plaintiff-Appellant,

v.

MORRIS COUNTY
PROSECUTOR'S OFFICE,

    Defendant-Respondent.

_____

Submitted May 7, 2024 – Decided August 19, 2024

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0560-22.

Craig Szemple, appellant pro se.

Inglesino Taylor, attorneys for respondent (Justin A. Marchetta and Graham K. Staton, of counsel and on the brief).

PER CURIAM

In this appeal we consider an individual's right to obtain records after conclusion of all phases of their criminal proceeding under both the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access. After review of the record and consideration of the applicable legal principles, we affirm.

I.

A.

The relevant facts underlying defendant's conviction were set forth by our Supreme Court in State v. Szemple, 247 N.J. 82, 90 (2021) (holding the State was not required to produce the post-conviction discovery sought by defendant).

> Nicholas Mirov disappeared in 1975. Four months after his disappearance, police discovered a body in the woods. Police did not identify the body until 1991, after defendant's brother, when questioned about a separate homicide, revealed that defendant Craig Szemple had admitted to killing Mirov.

> Defendant was charged in 1991 with the first-degree murder of Mirov. At his first trial in 1992, after the State rested, Michael Boyle . . . , defendant's then father-in-law, produced a letter (the Boyle letter or the letter) believed to be written by defendant to his then-wife, Theresa Boyle Szemple . . . , admitting to Mirov's murder.

> . . . .

Boyle claimed that he discovered the unsigned letter in April 1991, sticking out of a box, while helping his daughter—defendant's then-wife, . . . move out of the marital home. Boyle believed that the incriminating letter was written by defendant to Theresa. The letter began, "[d]earest companion and trusted (new) wife."

According to Boyle, after finding the letter, he hid it, without telling his daughter. He waited over a year to disclose the letter that he believed was a confession to a murder because, he claimed, his ex-wife checked with an attorney who told her that the prosecution had sufficient evidence to convict defendant. That attorney, however, testified that he never had such a conversation with Boyle's ex-wife.

Defendant's first trial ended in a mistrial. When he was re-tried in 1994, the State introduced the letter as a key piece of evidence, arguing that in the letter defendant confided to his wife that he had murdered Mirov. The State, however, did not call Theresa as a witness. Instead, the State relied on a handwriting expert who opined that the letter was written by defendant. The State also presented the testimony of one of defendant's brothers, who asserted that defendant had confessed to him in 1975 that he had murdered Mirov.

Defendant took the stand and denied any involvement in Mirov's death or writing the confession letter to Theresa. He testified that his father made him the "heir apparent" to the family business and that the letter was likely manufactured by his brothers in a plot to frame him so that they could gain his share of his father's inheritance.

The jury convicted defendant.

A-0181-22

Whether investigators had interviewed Theresa about the letter allegedly written to her or whether the prosecutor's office withheld discovery on that subject was not an issue raised on defendant's direct appeal or in his post-conviction relief (PCR) proceeding.

[Id. at 87, 114-15.]

In 2016, defendant for the first time requested "copies of any statements or reports memorializing interviews with Theresa following Michael's production of the Boyle letter" from the Morris County Prosecutor's Office (MCPO). The MCPO denied the request on the grounds that "defendant had no right to post-conviction discovery" under State v. Marshall, 148 N.J. 89 (1997).

On January 19, 2018, defendant filed a motion to compel the disclosure of exculpatory evidence necessary for defendant to file a motion for a new trial. After hearing defendant's motion, the trial court denied it. On appeal, we reversed, "concluding that the State's obligation to produce discovery continued post-conviction under Rule 3:13-3(b)(1)(F) and (G) and the constitutional requirement to disclose exculpatory evidence under Brady v. Maryland." Szemple, 247 N.J. at 88 (internal citations omitted). In a 4-3 decision, our Supreme Court reversed, and affirmed the trial court's denial of the motion. Applying an abuse of discretion standard, the Court stated that although the trial court miscategorized defendant's new trial motion as a second PCR petition, the

motion still must fail "because defendant cannot satisfy the 'reasonable diligence' requirement common to both motions." Id. at 100. Writing for the majority, Justice Solomon explained,

> [D]efendant's discovery request came decades after defendant learned about the ground upon which his request is based, and defendant failed to take any action upon that knowledge over the years and over the course of judicial proceedings focused on the letter's admissibility.
>
> Nor has defendant made any showing that discovery should be granted in the interest of justice because a record of the hypothetical interview might constitute exculpatory evidence. Although the title of defendant's motion invokes Brady,[1] defendant has not put forward any evidence in support of his claim that the information sought could be exculpatory or material.
>
> [Ibid.]

The Court noted that while the discovery sought was limited and specific, "defendant has failed to support his discovery request with any explanation of his failure to raise the present issue before the trial court, during direct appeal, or at the time of his first PCR." Id. at 109.

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

In his dissent, Justice Albin concluded that defendant's "particularized request for discovery in this case," was in line with our State's "open-file" approach to discovery. He reasoned that:

> [a] system of post-conviction relief cannot fulfill its true purpose if reasonable, relevant, and non-burdensome requests for discovery can be thwarted by a prosecutor's office intent on keeping from view discovery that was or should have been available pretrial. See R. 3:13-3(b)(1). Our system of justice should have nothing to fear from the dissemination of relevant information to the defense.
>
> [Id. at 113.]

B.

On January 12, 2022, after our Supreme Court's decision in Szemple was issued, plaintiff submitted both an OPRA and a common law public records request to the MCPO seeking certain records pertaining to Nicholas Mirov's murder investigation. Plaintiff submitted the following twelve requests:

> 1. Public Records of interviews of or about Theresa Boyle, and Public Records that refer to, relate to, or pertain to Theresa Boyle, including agreements, statements, reports, correspondence, or other writings (paper or electronic), audio recordings, video recordings, photographs, results of scientific tests (including records of lie detector tests and/or test results) of or about Theresa Boyle, whether created or maintained by employees, agents or contractors of the Morris County Prosecutor's Office or by other third-parties.

6

2. Documents received from Theresa Boyle that refer to, relate to, or pertain to the investigation and prosecution of Craig Szemple in the matter captioned <u>State of New Jersey v. Craig Szemple</u>, No. 91-12-01269-I (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa. 1975, and which, because of their nature, are required to be kept as a Public Record.

3. Public Records of interviews of or about Michael Boyle, and Public Records which refer to, relate to, or pertain to Michael Boyle, including agreements, statements, reports, correspondence, or other writings (paper or electronic), audio recordings, video recordings, photographs, results of scientific tests (including records of lie detector tests administered and/or test results) of or about Michael Boyle, whether by employees, agents or contractors of the Morris County Prosecutor's Office or other third-parties.

4. Documents received from Michael Boyle that refer to, relate to, or pertain to the investigation and prosecution of Craig Szemple in the matter captioned <u>State of New Jersey v. Craig Szemple</u>, No. 91-12-01269-l (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa. 1975, and which because of their nature are required to be kept as a Public Record.

5. Public Records of the Confidential Investigations Unit of the Morris County Prosecutor's Office that refer to, relate to, or pertain to the investigation and prosecution of Craig Szemple in the matter captioned <u>State of New Jersey v. Craig Szemple</u>, No. 91-12-01269-1 (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa. 1975.

6. Public Records created by or authored by Paul Kallenburg that refer to, relate to, or pertain to (a) the investigation and prosecution of Craig Szemple in the matter captioned State of New Jersey v. Craig Szemple, No. 91-12-01269-I (Morris County), (b) the death of Nicholas Mirov circa. 1975, (c) the investigation of Theresa Boyle, (d) the investigation of Michael Boyle; (e) the investigation of Brett Szemple, and (f) the investigation of Paul Selito.

7. Public Records of interviews of or about Brett Szemple, and Public Records that refer to, relate to, or pertain to Brett Szemple, including agreements, statements, reports, correspondence, or other writings (paper or electronic), audio recordings, video recordings, photographs, results of scientific tests (including records of lie detector tests administered and/or test results) of or about Brett Szemple, whether created or maintained by employees, agents or contractors of the Morris County Prosecutor's Office or by other third-parties.

8. Documents received from or addressed to George Daggett that refer to, relate to, or pertain to the investigation and prosecution of Craig Szemple in the matter captioned State of New Jersey v. Craig Szemple, No. 91-12-01269-I (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa. 1975, and which because of their nature are required to be kept as a Public Record.

9. Public Records of interviews of or about Paul Selito, and Public Records that refer to, relate to, or pertain to Paul Selito, including agreements, statements, reports, correspondence, or other writings (paper or electronic), audio recordings, video recordings, photographs of or about Paul Selito, whether created or maintained by

8

employees, agents or contractors of the Morris County Prosecutor's Office or by other third-parties.

10. Documents received from Paul Selito that refer to, relate to, or pertain to the investigation and prosecution of Craig Szemple in the matter captioned State of <u>New Jersey v. Craig Szemple</u>, No. 91-12-01269-T [sic] (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa. 1975, and which because of their nature are required to be kept as a Public Record.

11. Public Records authored by or created by Thomas Critchley, Jr., that refer to, relate to, or pertain to the investigation and prosecution of Craig Szemple in the matter captioned <u>State of New Jersey v. Craig Szemple</u>, No. 91-12-01269-1 (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa. 1975.

12. Public Records that refer to, relate to, or pertain to investigations into, the conduct of employees, agents, or contractors of the Morris County Prosecutor's Office that refer to, relate to, or pertain to the unauthorized access, use, reproduction, or possession of Public Records related to the investigation and prosecution of Craig Francis Szemple in the matter captioned <u>State of New Jersey v. Craig Szemple</u>, No. 91-12-01269-I (Morris County), or that relate to, refer to, or pertain to the investigation into the death of Nicholas Mirov circa, 1975.

The MCPO denied Szemple's request, stating his "request essentially seeks discovery which was already provided," and further, that OPRA was not intended as a "substitute for discovery; as the legislature created no law

9

requiring the results of a law-enforcement investigation to be maintained or kept, and thus such results are not subject to OPRA." MCPO also declared requests two, four, five, six, eight, ten, eleven, and twelve "invalid under OPRA because they fail[ed] to specifically name identifiable government records and because the request[s] require[] research beyond the scope of a custodian's duties." The MCPO described the requests as insufficiently defined "open-ended searches" of its files and pointed to plaintiff's use of the words "that refer to, relate to, or pertain to" as indicating a "lack[ of] specificity necessary to be considered valid [requests] under OPRA." Next, the MCPO denied requests one, three, seven, and nine as exempt criminal investigatory records. The MCPO also denied plaintiff's common law record request, balancing the relative interests of the parties and citing cases supporting its findings.

In March 2022, Szemple filed a complaint in the Law Division, alleging defendant violated both OPRA and the common law right of access to public records. The MCPO moved to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2, and the court heard argument on July 13, 2022.

The trial court granted defendant's motion in its entirety and issued an accompanying statement of reasons. First addressing plaintiff's OPRA claim, the court found that the criminal investigatory exemption, N.J.S.A. 47:1A-1.1,

applied to bar disclosure of the requested records. To support its finding, the trial court cited to Szemple, 247 N.J. at 96, where the Court highlighted the fact that plaintiff "had 'access since his first trial . . . to every piece of evidence used [in his conviction].'" It found that "the MCPO was not required by law to make, maintain or keep on file the records sought in the subject requests," and further found that Szemple had been provided discovery which included a redacted transcript of Theresa Boyle's interview before his retrial.

Next, the court addressed Szemple's requests under the common law right of access. Citing Marshall, 148 N.J. at 274, it found that Szemple was "[i]n effect, . . . seeking post-conviction discovery relief, which he is not entitled to invoke under the common law . . . ." The court also cited Szemple, 247 N.J. at 96, reasoning "[p]laintiff has had access to every piece of evidence used in his conviction since his first trial." It also found that "[n]o public interest [would be] served by requiring an agency to produce documents that were already provided to a requestor or documents that a requestor may already possess."

On appeal, Szemple argues the court erred by dismissing his OPRA claim, as the records requested do not fall under the criminal investigatory records exemption under N.J.S.A. 47:1A-1.1. He also argues that his status as a defendant does not transform his common law records request into a request to

11

extend discovery, and that as a citizen, his right to access public records remains intact.

## II.

We recite the well-settled case law governing our review of motions to dismiss. "Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a motion under Rule 4:6-2(e), "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Id. at 171 (quoting Dimitrakopoulos, 237 N.J. at 107).

We review de novo a court's interpretation of OPRA, which constitutes a legal determination. In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 273-74 (2017). "We apply the same standard of review to the court's legal conclusions with respect to whether access to public records is appropriate under the common-law right of access." Drinker Biddle & Reath LLP v. New Jersey Dep't of L. & Pub. Safety, Div. of L., 421 N.J. Super. 489, 497 (App. Div. 2011).

We begin with Szemple's argument that the trial court erred in dismissing his OPRA claims.

"OPRA embodies the principle of broad access to public records in the public's interest." Digit. First Media v. Ewing Twp., 46 N.J. Super. 389, 397 (App. Div. 2020) (citing N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 555 (2017)). The statute "sets forth in detail the manner in which requests for inspection, examination, and copying of government records are to be addressed, at times underscoring the responsiveness and cooperation expected from custodians." Gilleran v. Bloomfield, 227 N.J. 159, 170 (2016) (citing N.J.S.A. 47:1A-5). Further, the statute mandates "all government records shall be subject to public access unless exempt," N.J.S.A. 47:1A-1, and it places on the government the burden of establishing an exemption. N.J.S.A. 47:1A-6; see Mason v. City of Hoboken, 196 N.J. 51, 66-67 (2008).

OPRA's broad right to access is not absolute; it is limited by "established public-policy exceptions," stated in the statute, which declare "[a] government record shall not include . . . information which is deemed to be confidential." Gilleran, 227 N.J. at 170 (quoting N.J.S.A. 47:1A-1.1). However, the public entity must include specific reasons for withholding documents, Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140,

162 (App. Div. 2011), and must prove a "denial of access is authorized by law." N.J.S.A. 47:1A-6.

OPRA exempts certain government records from disclosure provided the information is deemed confidential, such as criminal investigatory records. See N.J.S.A. 47:1A-1.1. "To qualify for the exception—and be exempt from disclosure—a record (1) must not be 'required by law to be made,' and (2) must 'pertain[ ] to a criminal investigation.'" Lyndhurst, 229 N.J. at 564. The agency seeking to withhold the record must show that both prongs to the exception are satisfied. Paff v. Ocean Cty. Prosecutor's Off. (Paff II), 235 N.J. 1, 18 (2018) (citing Lyndhurst, 229 N.J. at 556).

Documents required by law that pertain to a criminal investigation can be thought of as an exception-to-the-exception. In consideration of OPRA's "expansive reach," such documents are those that are mandated either by statute, regulation, executive order, judicial decision or so required by adopted guidelines, directives or policies issued by the Attorney General. See id. at 565.

In 2011, the Attorney General issued Guidelines for the Retention of Evidence, (Jan. 6, 2011), "to provide for the retention of evidence in criminal cases to protect public safety and the interests of crime victims and their families, and to afford to those who are serving a sentence for a crime the

opportunity to challenge their convictions, in appropriate cases." The Directive was adopted pursuant to the Criminal Justice Act, which provides for general supervision over the County Prosecutors by the Attorney General as the chief law enforcement officer of the State. Ibid. (citing N.J.S.A. 52:17B-98, -103).

There are specific timeframes for the retention of evidence, depending upon the type of crime involved. Ibid. In this case, the relevant provision, Section 1b, titled "Homicide Evidence," states: "[i]n cases where the defendants were convicted and no appeals or post-conviction relief motions are pending, after a period of 5 years from the date of conviction or upon the defendants' expiration of sentence, whichever is later, a request for destruction authorization may be submitted." Ibid.

As the records Szemple requested pertain to a homicide investigation where there are no appeals or PCR motions pending, we conclude that the MCPO would not be required to maintain the records even if they did exist at one point under the Directive. Although defendant filed a motion for a new trial in 2018, see Szemple, 247 N.J. at 91, we affirmed the denial of his last PCR application in 2011, and our Supreme Court denied certification, see State v. Szemple, 208 N.J. 369 (2011). Hence, we find no reason to disturb the trial court's finding

that the records requested fall within the criminal investigatory records exemption under OPRA.

Next, we turn to Szemple's argument that the trial court erred in dismissing his claim under the common law right of access.

"The common law right of access remains a distinct basis upon which to access public records." In re N.J. Firemen's Ass'n Obligation, 230 N.J. at 280.

> The common-law right to access records depends on three requirements: (1) the records must be common-law public documents; (2) the person seeking access must establish an interest in the subject matter of the material; and (3) the citizen's right to access "must be balanced against the State's interest in preventing disclosure."
>
> [Keddie v. Rutgers, 148 N.J. 36, 50 (1997) (quoting Higg-A-Rella, Inc. v. Cty. of Essex, 141 N.J. 35, 46 (1995)).]

Regarding the scope of records that are accessible under the first prong, the common law right of access "has not been limited by OPRA," Michelson v. Wyatt, 379 N.J. Super. 611, 624 (App. Div. 2005) (citing N.J.S.A. 47:1A-8), and under the common law, "[t]he . . . definition of public record is broader than OPRA," Kuehne Chem. Co. v. N. Jersey Dist. Water Supply Comm'n, 300 N.J. Super. 433, 439 (App. Div. 1997). As such, criminal investigatory records are accessible under the doctrine. See N.J.S.A. 47:1A-8. A common law public

record "include[s] almost every document recorded, generated, or produced by public officials, whether or not required by law to be made, maintained, or kept on file." O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 386-87 (App. Div. 2009); see also Rivera v. Union Cty. Pros. Off., 250 N.J. 124, 143-44 (2022) ("To constitute a common law public record, an item must 'be a written memorial . . . made by a public officer, and . . . the officer [must] be authorized by law to make it.'").

Considering the second prong, "the applicant's interest need not be personal; thus, a citizen's concern about a public problem is a sufficient interest for purposes of standing." Drinker Biddle, 421 N.J. Super. at 499 (quoting Home News v. Dep't of Health, 144 N.J. 446, 454 (1996)). In weighing the plaintiff's interest in the requested material, the court will consider whether "demand for inspection is premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest." Loigman v. Kimmelman, 102 N.J. 98, 112 (1986) (internal quotation marks omitted).

As to the next prong, balancing the right to access against the State's interest in preventing disclosure, the Loigman Court set forth a number of factors to for trial courts consider:

> (1) the extent to which disclosure will impede agency
> functions by discouraging citizens from providing

information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision[-]making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Gannett Satellite Info. Network, LLC v. Twp. of Neptune, 254 N.J. 242, 257 (2023) (quoting Loigman, 102 N.J. at 113).]

As the justification for confidentiality becomes less relevant, a requestor will have a lesser burden in demonstrating a need for the records. Technician Corp. v. Passaic Valley Water Com., 113 N.J. 233, 236 (1988). "If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need." Ibid.

Our Supreme Court in Lyndhurst applied the common law right to access principles to requests for criminal investigation records. Lyndhurst, 229 N.J. at 578. There, the interests weighed were the Attorney General's interest in the

integrity of the investigation and the interest of a news organization in seeking information about the investigation.  Id. at 558.  The Court held that "the danger to an ongoing investigation would typically weigh against disclosure of detailed witness statements and investigative reports while the investigation is underway, under both OPRA and the common law."  Lyndhurst, 229 N.J. at 551.

We affirm for the reasons stated by the trial court in its written statement. In dismissing plaintiff's claim, the trial court cited first to Marshall, 148 N.J. at 274, noting "[i]t is well-established that courts cannot grant a criminal defendant discovery beyond that authorized by the Rules Governing Criminal Practice." The court then found "plaintiff was already provided discovery in his criminal matter," and "had access to every piece of evidence used in his conviction since his first trial nearly thirty years ago."  It then found "[n]o public interest is served by requiring an agency to produce documents that were already provided to a requestor or documents that a requestor may already possess . . . nor does the State have an obligation to provide duplicate copies of documents to a requestor."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0181-22